UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHESTER FLOYD

v.                                          Case No. 8:15-cv-1367-T-23TGW
                                                      8:11-cr-333-T-23TGW

UNITED STATES OF AMERICA

_____

REPORT AND RECOMMENDATION

Chester Floyd, the defendant in the underlying criminal case, filed a

motion, through counsel, pursuant to 28 U.S.C. 2255 in which he alleged ineffective

assistance of counsel in advising him about accepting a plea agreement offered by the

government.  At an evidentiary hearing, the evidence conclusively established that

the government had not offered a plea agreement.  Accordingly, the defendant

retreated to the claim that, if his attorney had properly advised him, he would have

cooperated and the government would have offered a plea agreement that he would

have accepted.  This claim fails because it was not properly alleged, it is untimely,

and it is meritless because the evidence establishes that the defendant, who had

already had one horrible attempt at cooperation, had no interest in an additional

attempt.  I therefore recommend that the motion be denied.

1

I.

A.    On June 23, 2011, the defendant, Chester Floyd, and others were charged in an indictment with conspiracy to possess with the intent to distribute five kilograms or more of cocaine and 500 grams or more of methamphetamine (count one), an offense which carried a statutory mandatory minimum sentence of ten years. Floyd was originally arrested in the Western District of Wisconsin. After his transfer to the Middle District of Florida, attorney Jervis Wise was appointed to represent the defendant on August 19, 2011 (Doc. 50). Less than a week later, on August 25, 2011, attorney Wise moved to withdraw due to a conflict of interest based on his representation of another defendant in a related case (Doc. 66). On September 20, 2011, Wise was relieved of further representation, and attorney Joseph Hovsepian was appointed to represent the defendant (Doc. 85). A joint status report filed October 13, 2011, indicated that Floyd intended to proceed to trial (GX 2). On October 20, 2011, the government filed a motion for inquiry into potential conflict of interest. The government explained that it anticipated calling as a cooperating witness at trial a previous client Hovsepian represented (Doc. 105).

On October 27, 2011, the grand jury returned a superseding indictment that included two additional charges against Floyd: (1) possession of a firearm by a convicted felon (count five); and (2) possession of a firearm in furtherance of and in

2

relation to a drug trafficking crime in violation of 18 U.S.C. 924(c) (count six), the latter carrying a consecutive minimum five-year term of imprisonment (Doc. 117). At a hearing regarding the government's conflict motion held on October 28, 2011, the defendant requested another attorney be appointed (Doc. 118). I appointed attorney Christopher Desrochers (Doc. 120).

After a failed reverse proffer by the defendant on November 7, 2011, on November 29, 2011, the government filed its information to establish a prior conviction pursuant to 21 U.S.C. 851, which enhanced the defendant's mandatory minimum penalty as to count one to 20 years (Doc. 156). The defendant and co-defendant Pedro Lazaro Rodriguez proceeded to trial on January 23, 2012. On January 30, 2012, a jury found Floyd guilty of counts one, five and six of the Superseding Indictment (Doc. 213). The Court sentenced the defendant to a total term of imprisonment of 300 months (Doc. 248). The defendant appealed claiming the government presented insufficient evidence to convict him of being a member of the conspiracy. The Eleventh Circuit affirmed the conviction.

Floyd, who is now represented by retained counsel, timely filed his § 2255 motion asserting ineffective assistance of counsel in failing to "give adequate advice regarding the plea offer" (Cv-Doc. 1, p. 4). The defendant states his claim as follows:

3

> The government originally offered the Petitioner a plea to count one, pursuant to which he would have provided substantial assistance and been safety valve eligible. Mr. Floyd was told that, if he did not plead guilty, the government would add gun charges. However, Mr. Floyd was not advised of the consequences of the Government adding the gun charges and did not know that such would subject him to a minimum mandatory sentence and would preclude him from safety valve relief. Likewise, Mr. Floyd was not advised that count one carried a minimum mandatory sentence and that providing substantial assistance was the only mechanism available to him to potentially receive a lesser sentence. Had he been properly advised, he would have accepted the plea.

(id.). The relief requested by the defendant was to "allow him to accept plea agreement originally offered" (id., p. 12).

In its response, the government asserted that no plea offer was ever made to the defendant. In support of its position, the government submitted affidavits from attorneys Hovsepian and Desrochers. Both attorneys stated that during the time they represented the defendant they did not receive a plea agreement or plea offer from the government (Cv-Docs. 5-1, 5-2).

Desrochers' affidavit conflicted with the claims of the defendant. The District Court therefore found that an evidentiary hearing was necessary (Cv-Doc. 6). The matter was subsequently referred to me for a report and recommendation (Cv-Doc. 8).

4

B.     The evidentiary hearing was held on February 10, 2016.  The defendant was present with his retained attorney, Frances E. Martinez.  Assistant United States Attorney Josephine W. Thomas appeared on behalf of the government. Testimony was received from the defendant, attorney Hovsepian, and attorney Desrochers.

Defendant Floyd testified first.  He testified that attorney Wise met with him only once at which time Wise told Floyd that he had to resign.  Floyd added that Wise did not go over the penalty associated with the conspiracy offense.

Floyd stated that he met with attorney Hovsepian two times.  He admitted Hovsepian reviewed the indictment but could not recall whether he told him about the mandatory minimum penalty.  He also could not recall if Hovsepian discussed the possibility of the government adding gun charges.  He could not recall whether Hovsepian reviewed the evidence with him.  Floyd admitted Hovsepian advised him he could get a lesser sentence if he cooperated.  Floyd conceded that he told Hovsepian he was innocent and wanted to go to trial.

Defendant Floyd initially testified that attorney Desrochers never discussed with him the penalty associated with the conspiracy offense.  On cross-examination, the defendant testified that he could not recall whether Desrochers discussed either the penalties associated with the charges or the possibility of a § 851

enhancement. He admitted that Desrochers discussed the government's addition of a firearm charge via a superseding indictment that would result in an additional five years imprisonment if convicted.

Defendant Floyd stated that Desrochers told him law enforcement wanted to meet with him regarding the case but that Desrochers never discussed with him cooperation or the impact on his sentence. The defendant recalled meeting with law enforcement in November 2011. He admitted that he told law enforcement he had no involvement with the drug operation.

Floyd testified that both Hovsepian and Desrochers discussed the conspiracy charge with him but claimed that he did not understand the charge. The defendant initially testified that Desrochers did not try to convince him to plead guilty, but on cross-examination testified he could not recall. During his testimony, the defendant continued to profess his innocence in the conspiracy but testified he would have pled guilty to buying drugs. He clarified that he would have been interested in pleading guilty if the punishment had been "minimal."

Upon my inquiry, the defendant agreed the government never offered him a plea agreement. He stated that he now would like to cooperate and, if his former attorneys had advised him of the consequences before, he would have cooperated rather than proceeding to trial.

Attorney Hovsepian testified next.  Hovsepian stated he met with the defendant on October 5, 2011, at which time he reviewed the indictment and went over the guidelines.   He testified that he advised the defendant regarding the conspiracy law and that he faced a mandatory minimum sentence of 10 years incarceration.  He elaborated that, when explaining conspiracy, he usually gives a bank robbery scenario, and tells his clients that the driver is just as responsible as the bank robber. He testified he told the defendant that, given his prior drug conviction, the government was likely to enhance him under § 851 to a mandatory minimum of 20 years. Hovsepian stated he also discussed with the defendant the possibility of the addition of a gun charge by a superseding indictment.

Hovsepian recalled that the defendant was not phased by the penalties. Hovsepian explained that Floyd maintained his innocence and was not interested in cooperation. He added that the defendant told Hovsepian he had no knowledge about the conspiracy and never admitted to Hovsepian that he bought drugs.  Hovsepian testified the defendant "absolutely expressed" his desire to proceed to trial.  As a result, Hovsepian stated that he did not get as far as discussing a plea and, significantly, never received a written or verbal plea offer from the government during his representation of the defendant.

7

Hovsepian recalled an October 6, 2011, e-mail from AUSA Chris Murray in which he summarized the evidence and advised Hovsepian that law enforcement was interested in Floyd proffering. Hovsepian responded via e-mail that the defendant "advised me that he has little to no knowledge as to how he is involved in this case...." (GX 3, p. 4).

Hovsepian attested that he suggested a reverse proffer to the defendant because he felt that when the defendant was directly confronted he would perhaps change his mind regarding a trial. Hovsepian explained that the reverse proffer was not scheduled because the defendant requested a new attorney at the conflict hearing. Notably, the day before the hearing, the government filed a superseding indictment adding two gun charges.

Attorney Desrochers testified last. He testified that when he inherited the case from attorney Hovsepian, the case was headed to trial. He said that when he first met with the defendant on November 5, 2011, he reviewed the superseding indictment and went over the charges and associated penalties. With regard to the conspiracy offense, Desrochers testified that he used hypotheticals to explain it to the defendant. He recalled discussing different levels of conspirator involvement and his belief that the defendant acted as a stevedore. Desrochers testified that the defendant was "not pleased," but told Desrochers he did not do anything.

Desrochers specifically recalled telling the defendant about the mandatory minimum ten-year penalty for the conspiracy charge, the five-year consecutive gun penalty, and the possibility of a future § 851 enhancement. He recalled that, not only did the defendant understand the possibility of a sentence of more than 20 years, he seemed to already know the penalties and that it "didn't seem like new news." Desrochers stated that he told the defendant that it was his opinion that the fact the government had not yet filed a § 851 enhancement was a "shot across the bow" and that the government wanted to talk to the defendant. He also explained to the defendant that his cooperation could lead to a lesser sentence.

Desrochers averred that the defendant wanted to go to trial and appeared to be vetting him during their initial meeting to make certain that Desrochers would take the case to trial. Desrochers stated he told the defendant to keep his options open because law enforcement wanted to talk to him but the defendant insisted he did not know anything. According to Desrochers, the defendant agreed to a reverse proffer. Desrochers recalled no plea deal had been offered at that time, but that he had asked AUSA Murray to consider allowing the defendant to plead to the § 924(c) offense which carried a five-year penalty. He advised the defendant of that possibility if the reverse proffer went well and further advised him that his performance at the proffer dictated whether he would receive a plea offer.

9

Desrochers testified that prior to the reverse proffer he explained to the defendant that if the reverse proffer did not go well, the government would file a § 851 enhancement. He recalled that the case agent warned the defendant as well. Desrochers attested that the reverse proffer went "horribly" and that the defendant minimized his role, gave inconsistent answers, and was belligerent. The government did not make the defendant a plea offer after the proffer.

Desrochers explained he received an e-mail from AUSA Chris Murray on December 5, 2011, allowing the defendant one last chance to give a truthful proffer by December 12, 2011. The e-mail stated as follows:

> As you know, we are already expending substantial time and resources preparing for January 3rd trial. If Mr. Floyd desires to cooperate, time is of the essence. Our deadline for Mr. Floyd to proffer is Monday, December 12th, 2011. A truthful proffer from Mr. Floyd, as an indication of his willingness to cooperate with the United States, is a pre-condition of our making any offer to resolve this case by plea agreement. Thus, if he does not proffer on or before December 12th, there will be no plea offer from the United States.

(GX 6). Desrochers said that he spoke to the defendant who told him he absolutely did not want to proffer again. Desrochers testified that thereafter the government filed the § 851 enhancement. Desrochers stated he advised the defendant of the

enhancement by phone and letter. Desrochers testified that the defendant "didn't care" and wanted to go to trial.

Desrochers recalled that his meeting with the defendant in preparation for trial also did not go well. He explained that the defendant was belligerent and angry and still wanted to proceed to trial. Desrochers recalled that after the trial commenced, he met with the defendant at the jail on a Wednesday night. Desrochers recalled that the defendant's demeanor had changed significantly. According to Desrochers, the defendant admitted he had been using drugs but still maintained his innocence with regard to the conspiracy. At that point, Desrochers came up with a buyer/seller defense that he presented to the jury. The defense was unsuccessful, and the defendant was convicted.

Desrochers admitted that he did not believe that the defendant would be eligible for safety valve relief. He further admitted that his reason for believing ineligibility turned out to be incorrect. Desrochers, however, explained that he advised the defendant about the possibility of the safety valve and that the defendant still wanted to go to trial.

Counsel were given the opportunity for closing arguments at the evidentiary hearing. Defendant's counsel admitted there was never a written plea agreement, but argued the defendant did not understand the conspiracy charge and,

further, did not understand the consequences of the charges.  She argued that had the defendant been properly advised of the benefits of cooperating, he would have pled guilty.  Defense counsel requested that the defendant be permitted to proffer to put the government in the position to offer him a plea agreement or allow the defendant to plead open to the court.[1]

The government responded that the defendant had not met his burden. The government contended that there was no evidence of deficient performance. The government argued that there was no evidence of plea negotiations. The government further contended that, given the defendant's maintenance of innocence, he never would have pled guilty, and thus failed to show prejudice.

---

[1] In support of the request, defendant's counsel relied on <u>United States v. Resendez-Ceballos</u>, Nos. 06cr63WQH, 09cv835WQH, 2009 WL 4642386 (S.D. Calif. Dec. 2, 2009), wherein the court found, based on the uncontradicted evidence, that defendant's counsel failed to properly advise her regarding the advisory guideline range of 235 to 293 months or the maximum sentence of life imprisonment resulting in the defendant's rejection of a formal plea offer. The court ordered the government to reinstate the original plea offer. <u>Id</u>. at *10.  Not only is <u>Resendez-Ceballos</u> not binding on this Court, it is completely distinguishable in that there the government actually offered the defendant a plea to a fixed term of 48 months. <u>Id</u>. at *1.  In this case, the defendant admits there was never any formal plea offer and the parties never even reached the plea bargaining stage. Thus, even if Floyd were entitled to relief, there simply is no plea offer to reinstate.

II.

Claims of ineffective assistance of counsel are considered under the standards set out in Strickland v. Washington, 466 U.S. 668 (1984). Under those standards, a defendant seeking relief on a claim of ineffective assistance, in general, has the burden of showing (1) that his counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. Id. at 687.

The first prong of the Strickland test requires the Court to determine whether trial counsel performed below an "objective standard of reasonableness," while viewing counsel's challenged conduct on the facts of the particular case at the time of counsel's conduct. 466 U.S. at 688. Notably, there is a strong presumption that counsel rendered adequate assistance and made all significant decisions with reasonable and competent judgment. Id. at 690.

To succeed on the second prong of the Strickland test on a claim relating to an attorney's advice about pleading guilty, a petitioner must show "a reasonable probability that, but for counsel's errors, he would ... have pleaded guilty and would [not] have insisted on going to trial." Coulter v. Herring, 60 F.3d 1499, 1504 (11th Cir. 1995) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). A reasonable probability is a "probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. A petitioner must show a "substantial, not just

conceivable, likelihood of a different result." Cullen v. Pinholster, 131 S.Ct. 1388, 1403 (2011) (citation omitted). Significantly, a defendant fails to show prejudice where he fails to offer evidence that he would have accepted a plea if not for his counsel's ineffective assistance. Glover v. United States, 522 Fed. Appx. 720, 723 (11th Cir. 2013).

After the fact testimony by a defendant regarding his desire to plead guilty, without more, is insufficient to establish prejudice. Diaz v. United States, 930 F.2d 832, 835 (11th Cir. 1991). Furthermore, the defendant's denial of guilt is a relevant consideration in determining whether a defendant would have accepted a plea. Osley v. United States, 751 F.3d 1214, 1224 (11th Cir. 2014).

Defendants are entitled to the effective assistance of competent counsel during plea negotiations and, consequently, the Strickland test applies to claims of ineffective assistance with regard to plea offers . Lafler v. Cooper, 132 S.Ct. 1376, 1384 (2012); Missouri v. Frye, 132 S.Ct. 1399, 1409-10 (2012). Specifically, defense counsel has a duty to "communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." Frye, supra, 132 S. Ct. at 1408. Where a defendant claims ineffective assistance of counsel in failing to advise him of a formal plea offer or to reject an offer, in establishing prejudice he must show that, but for ineffective assistance of counsel, he would have accepted the

plea, the court would have accepted its terms, and "the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." Lafler, supra, 132 S.Ct. at 1385; see Frye, supra, 132 S.Ct. at 1409.

III.

A.     The defendant's § 2255 motion was filed by retained counsel. The motion alleged just one claim. That claim, which was set out above, supra, p. 4, was entitled "Ineffective assistance of counsel for failure to give adequate advice regarding the plea offer" (Doc. 1, p. 4). The claim alleged that the government had offered the defendant a plea to count one, the conspiracy drug charge, and that he was not advised of the minimum mandatory sentence on that charge or of the consequences of a gun charge that the government would add if he did not plead guilty. The defendant alleges further, "[h]ad he been properly advised, he would have accepted the plea" (id.). The relief requested was to "allow him to accept plea agreement originally offered" (id., p. 12).

In response to the § 2255 motion, the government asserted that "no plea offer was ever made to Floyd by the United States" (Doc. 5, p. 4). That assertion was substantiated by the testimony of Hovsepian and Desrochers, each of whom confirmed that there was no plea offer.

15

Further, their testimony was corroborated by documentation. Thus, there was an e-mail sent by AUSA Murray to Desrochers on December 5, 2011, stating that "[a] truthful proffer from Mr. Floyd, as an indication of his willingness to cooperate with the United States, is a pre-condition of our making any offer to resolve this case by plea agreement" and that "if he does not proffer on or before December 12th, there will be no plea offer from the United States" (Gov. Ex. 6).

Three days later, Desrochers wrote the defendant a detailed letter, which, among other things, transmitted a § 851 notice that, as the defendant was informed, increased the minimum mandatory sentence to the conspiracy drug charge from 10 years to 20 years (Gov. Ex. 10). The letter stated further (id.):

> I have also enclosed a copy of an email that I recently received. Apparently, the government is not interested in pursuing plea negotiations with you until you have first truthfully proffered with them. According to our telephone conference, you are not interested in proffering because you are not guilty, and you do not know anything about the instant offense.

> For your records, I have also enclosed an email that we discussed, where the government is conditioning any plea offers on both you proffering and you doing so by December 12, 2011. Since you have already indicated that you do not wish to proffer, I will not elaborate on this any further. However, if you do wish more detail or information, please let me know.

16

In light of the evidence, the defendant's attorney acknowledged that there was no plea offer by the government. Accordingly, the sole claim alleged by the defendant — one that sought to "allow him to accept plea agreement originally offered" — is baseless.

B.     At the point of acknowledging that there was no plea offer by the government, the defendant's attorney sought to raise a different claim. Thus, she asserted that, if the defendant had been properly advised to cooperate, he would have chosen to pursue a plea agreement and not go to trial. For several reasons, such a claim is unavailing. First, the claim was not properly pled. Second, even if it had been pled, it would be time-barred. Third, the evidence clearly establishes that the defendant had no interest in cooperating because he maintained throughout that he was not involved in the conspiracy.

The Rules Governing Section 2255 Proceedings provide that the motion must:

    (1)    specify all the grounds for relief available to the moving party;
    (2)    state the facts supporting each ground;
    (3)    state the relief requested;
    (4)    be printed, typewritten, or legibly handwritten; and
    (5)    be signed under penalty of perjury by the movant or by a person authorized to sign it for the movant.

The defendant's extemporaneous claim does not satisfy these requirements.

The motion does not specify any ground based upon a failure to advise the defendant to cooperate. There was only one ground alleged and that was based upon an alleged failure to advise the defendant to accept a plea offer.

Further, the motion did not state facts supporting a claim of failure to advise the defendant to cooperate. Notably, there was no allegation that, if the defendant had been advised to cooperate, he would have done so. Because this was not a pro se motion, but was drafted by retained counsel, the generous reading given to pro se pleadings does not apply.[2]

In addition, the motion did not state any relief that would be appropriate if there had been a failure to advise the defendant to cooperate. The only relief requested in the motion was to allow the defendant to accept the plea agreement that was originally offered. That relief, of course, is not available since there was no plea agreement offered. When that was pointed out at the hearing, the defendant's attorney stated that the defendant should be afforded the opportunity to cooperate and then the government could decide whether to offer a plea agreement or the defendant could be permitted to plead open if there were no plea offer. That suggested relief is so nonsensical it requires no discussion except to say that the criminal case was

---

[2]In fairness to counsel, it is most likely that the defendant was not candid and forthcoming with her in discussing the case.

closed as to the last defendant almost four years ago and the defendant was sentenced

in accordance with minimum mandatory provisions. In all events, no such relief was

requested in the motion.

Further, the claim was not printed, typewritten or handwritten as required

by the Section 2255 Rules. Also, the claim was not signed under penalty of perjury.

For all these reasons, a claim of a failure to advise the defendant to

cooperate was not properly pled.

Moreover, the attorney's extemporaneous statement of a claim cannot

plausibly be considered an amendment to the claim that was alleged in Ground One.

The assertion of the new claim was made near the end of the evidentiary hearing.

Under these circumstances, the claim that was pled could only be amended by consent

or leave of court. Rule 15(a)(2), F.R.Civ.P. Leave to amend the claim in Ground One

was never requested, and thus it was never granted. Consequently, the claim that the

defendant was not advised to cooperate was not properly raised.

Furthermore, even if the new claim regarding cooperation could

somehow be viewed as properly raised, it would be untimely. The Antiterrorism and

Effective Death Penalty Act of 1996 enacted a one-year statute of limitations for

filing claims under § 2255. That Act requires claims to be filed within one year after

the judgment of conviction becomes final, 28 U.S.C. 2255(f)(1), which here is the

date the time for filing a petition for certiorari expires.  In this case, that is ninety days from the affirmance by the Eleventh Circuit on March 12, 2014 (Doc. 1, p. 2). Consequently, a claim first asserted at the evidentiary hearing on February 10, 2016, is clearly untimely.

The claim could be considered timely, however, if it were viewed as an amendment that relates back to the original § 2255 motion, which was timely filed. Rule 15(c)(1)(B), F.R.Civ.P., provides that "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out — or attempted to be set out — in the original pleading." This provision has no application here because, as previously explained, the defendant did not seek, and obtain, leave to amend his original claim.  In addition, the defendant's new claim does not meet the conditions for relation back.

In <u>Davenport</u> v. <u>United States</u>, 217 F.3d 1341 (11th Cir. 2000), the Eleventh Circuit considered whether amended claims of ineffective assistance of counsel related back to timely filed claims of ineffective assistance of counsel.  In concluding that they did not, the court stated that "in order to relate back, the untimely claim must have arisen from the 'same set of facts' as the timely filed claim,

not from some separate conduct or a separate occurrence in 'both time and type.'"
213 F.3d at 1344.

The new claim asserted here does not meet the criterion for relation back. Thus, the original claim was based upon an alleged plea agreement, while the new claim focuses on a lack of cooperation. Since the new claim arises from separate conduct, it does not relate back. Consequently, the claim fails because it is untimely.

In all events, a claim alleging a failure to advise regarding cooperation loses on the merits. The evidence establishes, and I find, that no matter what Hovsepian and Desrochers said to the defendant about the case, the defendant would (stubbornly) refuse to cooperate.

The two lawyers each testified that they explained the conspiracy charge to the defendant, contrary to what the defendant indicated, and I find their testimony credible. Further, I find credible Hovsepian's testimony that he advised the defendant of the ten-year minimum mandatory sentence on the drug charge, and the possibility of both a § 851 enhancement resulting in a twenty-year minimum mandatory sentence and an additional gun charge with its five-year consecutive penalty. Similarly, I find credible Desrochers' testimony that he also advised the defendant of those penalties. Moreover, Desrochers sent the defendant a letter informing the defendant that the government had filed a § 851 enhancement, so that the minimum mandatory sentence

21

became 20 years (Gov. Ex. 10). Consequently, I find that the defendant understood the conspiracy charge and the penalties he was facing.

Nevertheless, the defendant told each lawyer that he was innocent of the conspiracy charge, did not have any information about the conspiracy, and wanted to go to trial. A proffer was conducted with Desrochers as his attorney. Desrochers testified that the proffer went "horribly." He said that the defendant minimized his role, gave contradictory answers, and got belligerent.

The government gave the defendant a second opportunity to cooperate (Gov. Ex. 6). Desrochers testified that the defendant did not want to proffer again. This is corroborated by Desrochers' letter to the defendant on December 8, 2011, which states: "According to our telephone conference, you are not interested in proffering because you are not guilty, and you do not know anything about the instant offense" (Gov. Ex. 10). Accordingly, I find that the defendant did not want to cooperate with the government.

It is noted that the defendant testified to the contrary, stating that if his attorney had advised him of the consequences, he would have cooperated rather than proceeding to trial. I reject this testimony. In the first place, I find that the defendant was advised of the consequences. Moreover, I find that the defendant was not a credible witness. Thus, he was a convicted felon with a great interest in a favorable

outcome. Further his testimony at times was contradicted by credible evidence, it varied, it was inconsistent, and it was uncertain due to a purported inability to recall.

In sum, a claim that the defendant's attorneys rendered ineffective assistance because they did not advise him to cooperate with the government is unavailing. The claim was not properly pled, it is time-barred, and it fails on the merits.

IV.

For these reasons, I recommend that the motion to vacate pursuant to 28 U.S.C. 2255 (Doc. 1) be denied.


Respectfully submitted,


THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE


DATED: APRIL *18*, 2016

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.   A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. 11th Cir. R. 3-1.